UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KELLY RAINEY,

    Plaintiff,

    v.                                                       Case No. 21-CV-1185-SCD

JESSE LEWIS, CURT BECK,
and MICHAEL SPIEGEL,

    Defendants.

## DECISION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    In August 2019, Racine Investigator Jesse Lewis obtained a search warrant for Kelly Rainey's residence based on information supplied by a confidential informant. Relying primarily on Lewis' investigation, two additional officers (defendants Curt Beck and Michael Spiegel) arrested Rainey prior to execution of the search warrant. The State charged Rainey with conspiracy to commit homicide, possession of cocaine with intent to deliver, and possession of THC. Rainey spent nineteen months in jail before the State dropped the charges. Upon his release, Rainey filed a civil rights complaint under 42 U.S.C. § 1983 for violation of his rights under the Fourth and Fourteenth Amendments. He claims the defendants lacked probable cause for the search and arrest and that Lewis misled the judge who issued the search warrant. The defendants have moved for summary judgment on all claims.

## BACKGROUND

    An officer from the Kenosha Drug Operation Group introduced Lewis (of the Racine County Metro Drug Enforcement Unit) to Melody Rose as a reliable confidential informant

in the late spring or early summer of 2019. Def.'s Resp., ECF No. 57 at 4. While working with Lewis, Rose performed controlled drug buys involving numerous individuals in addition to exchanges allegedly involving Rainey. *Id.* at 5.

According to the defendants, Rose completed controlled drug buys from Rainey on July 31, August 12, August 13, and August 14, 2019. *Id.* at 6. Rainey maintains that he never sold crack cocaine to Rose. *Id.* Rainey does not dispute Lewis' claim that he searched Rose before each of the controlled buys and that she returned with substances that tested positive for cocaine each time—he simply maintains that he did not supply any such drugs. *Id.* at 6–7. Lewis provided Rose with a cell phone to record the interactions. *Id.* at 7. However, the parties have not provided audio or video evidence in connection with the alleged purchase on August 12. The video recordings from July 31 and August 13 reflect that Rainey was not home during the controlled buys. *Id.*

The recording from July 31 reflects Rose exiting a vehicle, walking down the street, entering an unlocked residence, exchanging a short conversation about Rainey's absence with what sounds to be two individuals who are never visible, and walking back outside. Exhibit to ECF No. 58 (7/31/19 Buy Video, RASO 19-43610—available in hard copy only) at 0:00:00–0:02:56. The recording does not audibly or visually depict an exchange of money or other items. *See id.* The recording from August 13 reflects Rose exiting a vehicle, walking up a driveway, entering the unlocked residence, and conversing with two male individuals. Exhibit to ECF No. 58 (8/13/19 Buy Video, RASO 19-46327—available in hard copy only) at 0:00:00–0:02:28. The exchange is not clear, but one of the men appears to state something to the effect of "he said something like sixty dollars" to which Rose responds that she will call him and get it to twenty. *Id.* at 0:00:48–0:00:54. Rose sets a bill on the coffee table and

2

apparently places a call during which she states, "I just left a twenty" and then indicates she cannot hear the call recipient so she will text him. *Id.* at 0:00:55–0:02:08. One of the men in the house asks Rose an undecipherable question, and she responds, "It's out here. I see it, with the shark on it," and he responds, "I guess, I don't know." *Id.* at 0:02:15–0:02:20. The video does not depict whatever item Rose referenced. *See id.* Rose then appears to walk back outside to a vehicle. *Id.* at 0:02:28–0:03:02.

On August 14, 2019, Rainey sent Rose the following text messages at 5:17 A.M.

 

ECF No. 57 at 8–9. At approximately 7:15 A.M. the same day, Rose contacted Lewis and shared that Rainey had come to her residence asking for help with legal paperwork that morning. *Id.* at 10. Rose told Lewis that she met with Rainey in a certain parking lot and that:

3

(1) Rainey explained he filed a federal lawsuit against a Kenosha County Sheriff's Deputy named Chase Forster; (2) Rainey said that he lost the lawsuit against Forster, cops always get away with stuff, and he wanted Forster "gone" (killed); and (3) Rainey would be able to obtain a "thing" (gun) for Rose to use to kill Forster. *Id.* Rose told Lewis that Rainey was going to pay her $100 for helping with his legal paperwork, plus another $200 down for the "job" and $200 when it was done. *Id.* at 9. Rainey disputes that his alleged conversation with Rose ever took place. *Id.* at 10. Rainey agrees that he sought Rose's help with his legal paperwork for the lawsuit against the Kenosha County Sheriff's Department. *Id.* at 9. Rainey further agrees that he provided a photograph to Rose of the individual who he believed to be Forster, but states that the image was solely related to the lawsuit. *Id.* at 8. He does not explain how a photograph would assist Rose in helping him with his civil suit.

Lewis developed a plan for Rose to complete a controlled buy from Rainey later that morning. *Id.* at 11. The recording from that August 14 buy reflects Rose discussing the plan with Lewis in his vehicle and approaching Rainey in his vehicle at approximately 10 o'clock in the morning. Exhibit to ECF No. 58 (8/14/19 Buy Video, RASO 19-46586—available in hard copy only) at 0:00:00–0:00:23. Rose stands outside the driver window for the entirety of the interaction. *Id.* at 0:00:40–0:07:32. Rose asks Rainey whether he broke up with a girl like she told him to "over an hour" ago. *Id.* at 0:02:54–0:02:58. Rainey replies, "I'm not breaking up with her. . . No. I love her. I told you that I love you but you didn't like me . . . I mean we'll

4

always be friends." *Id.* at 0:03:06–0:03:26. Rainey and Rose proceed to discuss the events giving rise to Rainey's lawsuit. *Id.* at 0:03:37–0:04:28. The following conversation then ensues:

> Rose: So what am I gonna get outta this deal?
> Rainey: What did I just tell you?
> Rose: You didn't tell me nothing.
> Rainey: I did tell you.
> Rose: You said you weren't breaking up with your girl.
> . . . [undecipherable]
> Rainey: I gave you something. You know what I'm saying. I told you . . . it was ok you said you gave me only twenty.

*Id.* at 0:05:32–0:05:51. Then Rose says something about "two hundred now, two hundred later, that's four hundred dollars." *Id.* at 0:05:56–0:06:04. Rainey's response is undecipherable, and Rose replies, "I'm outta my mind now?" *Id.* at 0:06:04–0:06:06. Rainey's truck starts running, so it becomes even more difficult to hear him. *Id.* at 0:06:04. Eventually Rose repeats, "four hundred total, two hundred now, two hundred later," to which it sounds as if Rainey replies, "Stop [undecipherable]." *Id.* at 0:06:45–0:06:51. Rainey drives away, and Rose walks back to Lewis' vehicle. *Id.* at 0:07:32–0:08:20.[1]

Lewis and Rose planned for Rose to deliver the legal paperwork to Rainey at 4:00 P.M. that afternoon and receive the down payment and gun at that time. ECF No. 57 at 11. In the interim, Lewis obtained a no-knock search warrant for Rainey's residence. ECF No. 37-2 (warrant received at 1:55 P.M. on 8/14/19). At about 3:00 P.M., Rose informed Lewis that Rainey would not be able to get the gun until the following Friday, August 16, but Rainey still wanted to pick up the paperwork. ECF No. 57 at 12. At approximately 4:25 P.M., Rose gave

---

[1] It is clear that Rainey had spotted Lewis, who was parked nearby, during the alleged controlled buy. That could explain his reticence.

Rainey the paperwork at his vehicle and then advised Lewis that Rainey had only given her $20 even though she observed that he had a "large" amount of cash in his vehicle. *Id.* at 12.

After Rainey drove away from the paperwork exchange with Rose, Deputy Beck effected a traffic stop on Rainey's vehicle. *Id.* at 12–14. Deputy Beck pulled his gun, pointed it in Rainey's direction, and announced that Rainey was under arrest. *Id.* at 14. Rainey followed instructions and Sergeant Spiegel handcuffed Rainey without incident. *Id.* At some point after the officers took Rainey into custody, law enforcement executed the search warrant on his residence. Exhibit F—Incident Reports, ECF No. 51-3 at 15. The search revealed a small quantity of marijuana and some "emergency" cash, but no evidence relative to the murder-for-hire plot or cocaine. ECF No. 57 at 3.

In October 2021, Rainey filed a complaint in federal district court against Lewis, Beck, and Spiegel, alleging that the defendants violated his rights under the Fourth and Fourteenth Amendments. *See* ECF Nos. 1, 13. The clerk randomly assigned the matter to me, and all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 2, 23. On November 28, 2023, the defendants filed a brief in support of their motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* ECF No. 49. Rainey filed a brief in opposition, ECF No. 57, and the defendants filed a reply brief, ECF No. 61.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, I must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "However, [my] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in [his] favor." *Id.* (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

## DISCUSSION

"Section 1983 of Title 42 authorizes a federal cause of action against any person who, acting under color of state law, deprives another of rights secured by federal law or the United States Constitution." *Wollin v. Gondert*, 192 F.3d 616, 621 (7th Cir. 1999). Rainey vaguely

7

claims that the defendants violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. *See* ECF Nos. 37, 57.

**I.      The relevant constitutional standards require probable cause.**

"The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures, including arrests made without either a warrant or probable cause." *United States v. Cherry*, 920 F.3d 1126, 1133 (7th Cir. 2019). "Because the Fourth Amendment's requirements are more specific, 'a seizure that passes muster under the Fourth Amendment should also satisfy the requirements of the due process clause viewed as an independent source of constitutional norms.'" *Pasiewicz v. Lake Cty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001) (quoting *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984)). "Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." *Muhammad v. Pearson*, 900 F.3d 898, 907 (7th Cir. 2018) (quoting *Stokes v. Bd. of Educ. of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010)). "This is so even where the defendant officers allegedly acted upon a malicious motive." *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006).

"Police officers have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Id.* (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). "The court evaluates probable cause 'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'" *Id.* (citation omitted). "The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime." *Kelley*, 149 F.3d at 646. "If

8

so, the arrest is lawful even if the belief would have been mistaken." *Id.* (quoting *Mahoney v. Kesery*, 976 F.2d 1054, 1057–58 (7th Cir. 1992)). "Usually in a § 1983 false-arrest case the jury determines whether the arrest was supported by probable cause; but if the underlying facts are undisputed, the court can make that decision on summary judgment." *Abbott v. Sangamon Cty.*, 705 F.3d 706, 714 (7th Cir. 2013) (citing *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008)).

As for search warrant applications, these requests violate the Fourth Amendment "if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003). Reckless disregard for the truth may be demonstrated by showing that the affiant "entertained serious doubts" as to the truth of his allegations, had "obvious reasons" to doubt the accuracy of the information reported, or failed to inform the judicial officer of facts he knew would negate probable cause. *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001); *Neiman v. Keane*, 232 F.3d 577, 580 (7th Cir. 2000).

Finally, "the constitutional injury arising from a wrongful pretrial detention rests on the fundamental Fourth Amendment principle that a pretrial detention is a 'seizure'—both before formal legal process and after—and is justified only on probable cause." *Lewis v. City of Chi.*, 914 F.3d 472, 476–77 (7th Cir. 2019); *see also Manuel v. City of Joliet*, 580 U.S. 357, 368 (2017) (finding plaintiff stated Fourth Amendment claim when he alleged that his pretrial detention was not supported by probable cause because the judge's order holding him for trial was based only on "police fabrications").

## II. The arresting officers had probable cause to seize the plaintiff.

The defendants request that I enter summary judgment in their favor on all claims. ECF No. 49 at 1. Deputy Beck and Sergeant Spiegel's requests are easily granted because Rainey concedes that these two defendants "were not involved in the investigation into Rainey and could not have known that the high risk stop [was] based on erroneous and incorrect information." ECF No. 57 at 22. Rainey also admits he has no evidence that either officer (1) fabricated evidence against him, or (2) had any reason to believe information provided to them concerning the arrest was false. *Id.* at 14. That information included allegations that Rainey had sold crack cocaine on several prior occasions and had solicited someone to execute another law enforcement officer. ECF No. 61 at 23. Therefore, even taking the facts in the light most favorable to Rainey, the information known to Deputy Beck and Sergeant Spiegel at the time they arrested him sufficiently satisfied the standard for probable cause. *See Muhammad*, 900 F.3d at 908 ("[Probable cause] 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'") (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

## III. Investigator Lewis had probable cause to justify the search and seizure.

Investigator Lewis argues he is entitled to summary judgment because he had probable cause for both the search warrant and arrest. ECF Nos. 49 at 14, 61 at 18–23. For his part, Rainey alleges that Lewis attempted to frame him in retaliation for his lawsuit against Deputy Forster by recruiting Rose as a confidential informant. ECF No. 37 ¶¶ 28–29. But Rainey supplies no evidence of this far-fetched claim of retaliation. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("Summary judgment is the proverbial put up or shut up

moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (cleaned up) (citation omitted).

Rainey's principal challenge is to Rose's credibility as an informant and Lewis' acceptance of her information at face value. *See* ECF No. 57 at 16 (discussing Rose's alleged criminal history, including manufacturing/delivery of cocaine, and spurned romantic relationship with Rainey). Rainey acknowledges that Rose may have told Lewis about the drug purchases and the murder-for-hire plot, but he claims that Rose was patently unreliable.[2] *See id.* at 10, 12, 16–19. Rainey also contends there is insufficient evidence of his connection to the alleged purchases. *Id.* at 16. After all, there is no video surveillance of the transaction on August 12, Rainey was not even present during the July 31 or August 13 transactions, and there is no physical evidence suggesting that he arranged any of the first three transactions in his absence. *See id.* at 16–19. Rainey was present for the fourth alleged purchase at his vehicle, but the video does not confirm (or refute) that an exchange of drugs or money occurred. *See* 8/14/19 Buy Video. Finally, he argues that Lewis should have known the informant was a "woman scorned" who was out to frame him because of some kind of personal animus. ECF No. 57 at 16. And, Rainey asks, in what universe would someone accept the paltry sum of $500 to murder a cop? *Id.* at 19.

The defendants respond that they had evidence—albeit *imperfect* evidence—of several controlled buys using a reliable informant, and Rainey cannot dispute that Rose was searched before each buy and returned with drugs after meeting with Rainey or at least going into his house. ECF No. 61 at 2. In addition, police also had Rose's statement that Rainey was

---

[2] Rainey claims that the State dropped the charges against him because Rose recanted her statement. ECF No. 57 at 4. The defendants dispute this allegation and have provided an affidavit signed by Rose in August 2023 in which she stands by her version of events. *See* ECF Nos. 49 at 2, 50.

11

attempting to hire her to kill an officer. ECF No. 57 at 8. Moreover, it's undisputed that Rainey had sent a text message indicating a desire to "get rid of this dam pig" for $500 and had even given Rose a photo of the officer in question. *Id.* at 8–9; *see also* ECF No. 48 at ¶ 27. Based on that evidence, Lewis believes the police had more than enough to satisfy the probable cause standard.

Ultimately, the plaintiff's arguments are more properly directed to a jury in a criminal trial where the government has the burden of demonstrating guilt beyond a reasonable doubt. Rainey could poke holes in the controlled buys, noting that he was not even home for two of the four, and further noting that the video evidence did not support law enforcement's version of the story (although it did not refute it, either). He could try to explain how the drugs Rose produced to the police after the controlled buys came from someone other than himself. It's a steeper hill, of course, to convince a jury that when he told Rose to "get rid" of the officer, that directive somehow had something to do with his lawsuit, not murder. And, further, he'd have to explain how the photo he had given Rose was intended to help her (somehow) with the assistance she was providing him in his civil action, not to aid her in identifying him as the subject of the murder plot. It's at least conceivable a jury might have sided with him.

But Rainey's guilt beyond a reasonable doubt is not the question before me. Instead, I must determine whether Investigator Lewis had probable cause, a much lower standard. He did. "Probable cause does not even require proof by a preponderance of the evidence," much less proof beyond a reasonable doubt. *United States v. Schenck,* 3 F.4th 943, 948 (7th Cir. 2021). At the time they obtained the no-knock warrant, the police had a tip from a reliable informant that Rainey was plotting to kill an officer and that he'd even given the informant a photo of the officer. This threat was backed up by a text message stating that Rainey wanted to "get

12

Case 2:21-cv-01185-SCD    Filed 05/23/24    Page 12 of 14    Document 62

rid" of the officer and was offering money for the "favor." ECF Nos. 48 at ¶ 27, 57 at 8–9. Under those circumstances, it's unreasonable to think law enforcement should have sat back and waited to see how things played out, even if they might have entertained the benighted thought that Rose, the informant, was a "woman scorned." Not surprisingly, they quickly obtained a warrant based on the allegations of a murder-for-hire plot as well as two controlled buys within the previous 72 hours. ECF No. 51-2.

Accordingly, I find that Lewis had probable cause to support the arrest and search warrant he obtained for Rainey's house. *See Betker v. Gomez*, 692 F.3d 854, 862 (7th Cir. 2012) ("A search-warrant application will be sufficient to support a probable-cause finding if, 'based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.'") (citation omitted). Rainey has not set forth facts upon which a reasonable jury could find that Lewis—knowingly, intentionally, or with reckless disregard for the truth—made false statements that were necessary to the probable-cause determination.[3] *See id.* (determining whether a search warrant affidavit still established probable cause absent the affiant's allegedly false or misleading statements). For these reasons, Rainey has also not substantiated any claim for unlawful pretrial detention. *See Manuel*, 580 U.S. at 368. The existence of probable cause defeats Rainey's claims that Lewis violated his rights under the Fourth and Fourteenth

---

[3] Rainey emphasizes that Lewis obtained a no-knock warrant. ECF No. 57 at 20. But the officers already had Rainey in custody when law enforcement executed the search warrant, and the record suggests that they did not execute the warrant in a no-knock manner. ECF No. 51-3 at 30; Lewis Depo., ECF No. 52-1 at 31–32. Moreover, despite the drug-related transactions at the residence, Rainey has not argued that the officers lacked reasonable suspicion that knocking could impede their investigation. *See Richards v. Wisconsin*, 520 U.S. 385, 394–95 (1997) ("In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.").

13

Amendments. Accordingly, I find all three defendants are entitled to judgment as a matter of law.

## CONCLUSION

For all the foregoing reasons, the court **GRANTS** the defendants' motion for summary judgment, ECF No. 47. The action is dismissed with prejudice. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 23rd day of May, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge